Argued and submitted December 23, 1985, affirmed June 11, reconsideration denied
August 8, petition for review denied October 7, 1986 (302 Or 86)

## STATE OF OREGON,
*Respondent,*

*v.*

## CHARLES SHAWN ROWE,
*Appellant.*

(37584; A35240)

720 P2d 765

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, Pro Tempore, and Van Hoomissen and Young, Judges.

GILLETTE, P. J., Pro Tempore.

## GILLETTE, P. J., Pro Tempore

Defendant appeals his conviction for burglary in the first degree, assigning as error the admission of statements which he made to a police officer who questioned him several hours after he had asserted his right to silence during questioning by a different officer. Defendant challenges the admissibility of the statements under both the federal and state constitutions. We affirm.[1]

Defendant was a suspect in a burglary in Bend. Officer Points of the Bend Police Department asked Klamath County Deputy Sheriff Schrieber to arrest defendant on a burglary charge at his parents' home in Klamath Falls, where he was staying. Schrieber did so at 10:30 a.m., on August 1, 1984, and gave defendant *Miranda* warnings at that time. Defendant, after answering a few questions related to the burglary, told Schrieber that he did not want to answer any more questions on the matter; he did not invoke his right to counsel. Schrieber then stopped the questioning and took defendant to jail. Defendant did not initiate any further discussion of the burglary with Schrieber or, so far as the record shows, with anyone else.

Points arrived at the Klamath County Jail that afternoon. Schrieber told him that, after denying the burglary, defendant had said that he did not want to talk about the crime any more. Points then went to see defendant at 3:20 p.m. He found him talking to his parole officer. Points, who assumed that defendant objected only to talking with Schrieber about the crime, again gave him *Miranda* warnings. He did not ask him whether he was willing to talk despite his refusal to talk to Schrieber, nor did he otherwise refer to defendant's assertion of his right to silence. Defendant did not reassert his right to silence and made the statements which are in issue here.

In *State v. Kell,* 77 Or App 199, 712 P2d 827, *rev pending* (1986), we held that *Miranda* warnings are required under the Oregon Constitution before custodial interrogation.

---

[1] Defendant's other assignment of error, that the prosecutor's action in dismissing a theft indictment and reindicting him for burglary constituted vindictive prosecution, is not well taken. The prosecutor's actions were permissible under the facts of this case.

We did so because of the requirement in *State v. Sparklin,* 296 Or 85, 89, 672 P2d 1182 (1983), that the police "inform a detained person that he may terminate questioning at any time and that he may have an attorney to advise him before he speaks" and because of the Supreme Court's statement, in that case, that it would not require warnings in addition to the *Miranda* warnings "[a]t least as long as the text of the federal *Miranda* warnings remains the law * * *."[2] The Supreme Court held that those federal warnings are an adequate method of protecting the state constitutional right against compelled self-incrimination, although they are not necessarily the only way to effectuate that right. Or Const, Art I, § 12; *see State v. Mains,* 295 Or 640, 669 P2d 1112 (1983). The court indicated in *Sparklin* that it requires the specific *Miranda* warnings instead of others primarily for reasons of convenience, so that police officers need not give two different sets of warnings to the same suspect.

That the Oregon constitutional right against self-incrimination is presently protected by the same warnings which the United States Supreme Court requires under the Fifth and Fourteenth Amendments does not mean that the reasons for requiring the warnings are the same or that the same consequences flow from an assertion of constitutional rights. When it adopted the warnings rule, the United States Supreme Court was impressed by evidence of extensive police abuses of suspects' constitutional rights in order to extract confessions and by the difficulties of protecting against those abuses by after the fact determinations of voluntariness. *Miranda v. Arizona,* 384 US 436, 445-456, 86 S Ct 1602, 16 L Ed 2d 694 (1966). Although the Oregon Supreme Court has also been concerned with custodial interrogation practices since at least 1881, *see State v. Witzingerode,* 9 Or 153 (1881), Oregon cases do not reveal the extensive abuses which the federal cases showed. The police in this state have not always fully respected suspects' rights but, so far as Oregon appellate cases show, the "third degree" and kindred behavior have not flourished here. *See* cases cited in *State v. Kell, supra,* 77 Or

---

[2] To the degree that *State v. Sparklin, supra,* decided federal Sixth Amendment questions, it appears to have been overruled by *Michigan v. Jackson,* 475 US ___, 106 S Ct 1404, 89 L Ed 2d 631 (1986). However, *Sparklin* remains definitive on Article I, sections 11 and 12, of the Oregon Constitution.

App at 204 n 3; *see also State v. Cochran,* 72 Or App 499, 696 P2d 1114 (1985).

Because the need to control police misconduct appears perhaps less pressing in Oregon than elsewhere, it is not the primary reason for requiring warnings before custodial interrogation. Rather, the primary reason is to allow suspects to choose freely what course to pursue. The Oregon Supreme Court is not so much concerned to put an end to known abuses as to restore the balance which would otherwise weigh against the suspect. Whether or not a custodial interrogation is actually abusive, that interrogation, as *Sparklin* recognized, is inherently coercive. A person who is in custody is not the master of the situation; the police are. Article I, section 12, provides a way for a suspect to assert some control over the situation so that whatever he does will be the result of a knowing and voluntary choice.

The Oregon Constitution allows a suspect to assert control either by asking for an attorney's advice before speaking or by refusing to speak altogether. Under *Sparklin* the police must advise the suspect of those rights before questioning. "When the police honor these rights if defendant chooses to assert them, the coercive atmosphere of police interrogation is to some degree dispelled." *State v. Sparklin, supra,* 296 Or at 89. The purpose of the warnings is, thus, to alert the suspect to the adversarial nature of the situation and to give him the chance to decide whether to withdraw from the contest, to seek the help of counsel or to enter the fray unassisted. If that choice is knowing and voluntary, the constitutional purpose has been fulfilled; the warnings help ensure that the choice will be knowing and voluntary.

In this case, as in *State v. Kell, supra,* the question involves events occurring *after* the suspect has chosen to assert a constitutional right. In *Kell,* we held that the police may not initiate renewed questioning of a suspect who asserts the right to counsel but must instead wait for the suspect to have a change of mind. In this case defendant asserted the right to silence rather than the right to counsel, and we must decide what the police may do in that situation. The United States Supreme Court apparently holds that, after a suspect asserts the right to silence, the police may on their own initiative renew contact, give new *Miranda* warnings and

obtain a valid waiver of the federal constitutional right. *See Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981); *Michigan v. Mosely,* 423 US 96, 96 S Ct 321, 46 L Ed 2d 313 (1975); *Anderson v. Smith,* 751 F2d 96, 101 (2nd Cir 1984); *United States v. Bosby,* 675 F2d 1174, 1182 (llth Cir 1982); *United States ex rel Riley v. Franzen,* 653 F2d 1153, 1158, *cert den* 454 US 1067 (7th Cir 1981). We agree with that rule.

When an Oregon suspect receives the *Miranda* warnings, he confronts a series of choices. The first, and possibly most important, is to determine whether he feels able to deal with the police without the assistance of counsel. A decision either to invoke the right to silence or to submit to interrogation is a decision that the suspect *does not* need help; a decision to invoke the right to counsel is a decision that he *does* need help. A suspect who wants help in dealing with the police has obviously determined that he is in no position to deal with them without assistance. Thus, any police initiative to renew questioning on the substance of the offense before the arrival of counsel is a failure to recognize the suspect's own determination—which the *Miranda* warnings invite—that he needs help.

On the other hand, a suspect who only invokes the right to silence *has* expressed confidence in his ability to act without outside assistance. There is no reason to prohibit the police from reminding the suspect of his rights and again asking if he will waive them after a reasonable time has elapsed. So long as they do not act in a way which affects the suspect's ability to make a knowing and voluntary decision about waiver—and Points did not do so here—there is no reason to require them to do more. A person who knows his rights and who chooses to deal with the police unassisted has received all the counterbalancing assistance which the Oregon Constitution provides.[3] We are not convinced that conditions in Oregon presently require anything more to effectuate the Article I, section 12, right against self-incrimination.[4]

---

[3] It may be that a particular person is not actually able to decide these matters because of low intelligence, immaturity, mental disorder or some other reason. If so, that fact would affect the determination of whether any waiver of constitutional rights was knowing and voluntary or whether a subsequent statement was voluntary. Those unusual situations do not require a rule which would control the interrogation of all suspects.

[4] We reject defendant's federal constitutional claims on the basis of the federal cases which we cited previously.

Affirmed.