Argued and submitted January 31, affirmed August 13, reconsideration denied October 17, petition for review denied December 3, 1986 (302 Or 342)

# STATE OF OREGON,
*Respondent,*

*v.*

# WILLIAM FRANCIS BRADBURY, JR.,
*Appellant.*

(37744, 37745; CA A35697, A35698)

723 P2d 1051

John P. Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

Warden, J., specially concurring.

## RICHARDSON, P. J.

In this consolidated appeal, defendant appeals two convictions for burglary in the first degree. ORS 164.225. He assigns error to the trial court's refusal to suppress his confessions and evidence that the police seized without a search warrant from his sister's apartment. We affirm.

Defendant was under arrest and in custody at the police station when, after appropriate *Miranda* warnings, he stated that he wanted to talk to an attorney. Officer Sawyer asked him if he could search the apartment where defendant lived with his sister. Defendant consented, and the police seized items from the apartment that they believed had been stolen in two burglaries. Defendant argues that the use at trial of that evidence violated his right against compelled self-incrimination guaranteed by Article I, section 12, of the Oregon Constitution and the Fifth Amendment. More specifically, he argues that, under *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981), and *State v. Kell,* 77 Or App 199, 712 P2d 827 (1986), the officer was foreclosed from asking him for consent to search after he had invoked his right to counsel. We decided the same issue adversely to defendant's position in *State v. Baumeister,* 80 Or App 626, 723 P2d 1049 (1986). Defendant's assertion that his consent was not voluntary is also without merit. His consent to the search was valid, and the trial court did not err in admitting the evidence found during the search.

After the officers had seized the property, they brought it to the police station so that the victims of the burglaries could identify property stolen from them. They placed the items on a table just outside the room in which defendant was being held. At that point, defendant pounded on the door of the room and, when Sawyer opened it, defendant asked him what the charges were against him. Sawyer pointed to the goods on the table and said that he would be charged with burglary in connection with those items. Defendant replied, "That is bullshit. That's my stuff from Eugene." Sawyer then returned him to the room and later placed him in a holding cell. Approximately 45 minutes after he had been shown the purportedly stolen goods, defendant called for

Sawyer and told him that he wanted to talk. He then confessed to his involvement in the two burglaries. He gave a second, more detailed statement several hours later.

Defendant argues that Sawyer's confronting him with the stolen goods constituted improper interrogation under *Edwards v. Arizona, supra,* and *State v. Kell, supra,* because he had invoked, and not waived, his right to counsel. He argues that his immediate reply and his subsequent confessions were tainted by that illegality and must therefore be suppressed.

▇▇▇▇ Interrogation, for the purposes of *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), and its progeny means "express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 US 291, 300-301, 100 S Ct 1682, 64 L Ed 2d 297 (1980).[1]

> "* * * That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." 446 US at 301-302. (Footnotes omitted; emphasis in original.)

In appropriate circumstances, confronting a suspect with stolen goods could be deemed to constitute interrogation as defined in *Rhode Island v. Innis. See State v. Guayante,* 63 Or App 212, 663 P2d 784, *rev den* 295 Or 541 (1983); *see also*

---

[1] This definition of interrogation appears appropriate to us for the purpose of state constitutional analysis. *See State v. Smith,* 70 Or App 675, 691 P2d 484 (1984), *rev allowed* 298 Or 704 (1985).

*People v. Ferro,* 63 NY2d 316, 482 NYS2d 237, 472 NE2d 13 (1984). However, those circumstances do not exist here. Sawyer was merely responding to defendant's question when he pointed to the stolen goods. From the perception of defendant, Sawyer's conduct could not reasonably have been viewed as seeking a response. The use of the challenged statements did not violate defendant's right against compelled self-incrimination under either the state or federal constitution.

Defendant raises some arguments based on what he alleged was "excessive detention" by the police. He did not raise that issue in the trial court, and we will not consider it when raised for the first time on appeal. His argument that his confessions were not voluntary are without merit.

Affirmed.

**WARDEN, J.,** specially concurring.

I agree with the majority that the search of the apartment defendant shared with his sister was legal but only because the sister consented to the search and, under the trial court's findings of fact, that consent was voluntary. I do not agree that defendant's consent, given while he was under arrest and after he had requested the assistance of counsel, was voluntary.

A person in custody is in an inherently coercive situation. The police control where he stays, where he goes, whom he sees and many other decisions which together represent a person's autonomy. Being required to relinquish those decisions to the police necessarily affects the voluntariness of every decision the suspect makes, including decisions to talk with the police and to consent to a search. We recognize the effect of custody on the ability to decide whether to talk to the police by requiring that the police first inform a person in custody of his rights by giving the *Miranda* warnings. When he knows his rights and the police honor them, "the coercive atmosphere of police interrogation is *to some degree* dispelled." *State v. Sparklin,* 296 Or 85, 89, 672 P2d 1182 (1983). (Emphasis supplied.)

No warnings, however, can fully dispel the coercive effect of custody. Because that effect, in and of itself, can prevent a voluntary waiver of the suspect's rights, we have

held that the police may not interrogate a person who asserts the right to counsel, unless he has counsel present or initiates renewed contact on the subject of the offense. *State v. Kell,* 77 Or App 199, 712 P2d 827, *rev pending* (1986). A person who asks for counsel thereby states that he does not feel competent to deal with the police without counsel's assistance. *State v. Rowe,* 79 Or App 801, 806, 720 P2d 765, *rev den* 302 Or 86 (1986). Any subsequent waiver of the right to remain silent which results from a police initiative is probably the result of police exploitation of the suspect's sense of incompetence. We cannot accept such a waiver as effective, because, legally, it is involuntary.

*Kell* and *Rowe* apply directly only to the suspect's right to silence and to the related right to counsel under Article I, section 12, of the Oregon Constitution. However, we should treat a waiver of Article I, section 9, rights the same way. If a person is legally incapable of voluntarily consenting to talk in the absence of a lawyer, that person is also legally incapable of voluntarily consenting to talk to the police or to a search of his car, his home or anything else which the constitution protects. Both provisions protect the right to shield from official view matters which the person chooses not to expose—in one case the person's thoughts, memories and desires, in the other the person's self, house, papers and effects. The voluntariness of a decision to give up the constitution's protections and to make public what the person has a right to keep private should be judged by the same standards in either situation. By those standards defendant's consent to search the apartment was not effective, because it was legally involuntary.

I concur in the result because defendant's sister, who shared the apartment, consented to the search. As a co-occupant, she had the power to do that. *State v. Frame,* 45 Or App 723, 609 P2d 830, *rev den* 289 Or 587 (1980), *cert den* 450 US 968 (1981).[1] The trial court found that, although her consent was based in part on defendant's prior consent, she would have consented in any case. There is evidence to support that finding and we are therefore bound by it. That

---

[1]*State v. Frame, supra,* was based on the federal constitution. However, it is a correct statement of state constitutional law on the point.

consent is sufficient to validate the search, and I see no reversible error in what followed.