Submitted February 24, affirmed December 7, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHARLES DWAYNE HATFIELD,
*Defendant-Appellant.*

Marion County Circuit Court
07C50011; A140177

268 P3d 654

Peter Gartlan, Chief Defender, and Stephanie J. Hortsch, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Christina M. Hutchins, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant appeals judgments of conviction for the crimes of delivery of marijuana for consideration, ORS 475.860(2), delivery of marijuana within 1,000 feet of a school, ORS 475.862, manufacture of marijuana, ORS 475.856, and delivery of a Schedule I controlled substance, ORS 475.840(1). He raises several assignments of error, all but one of which we reject without discussion. We write only to address defendant's contention that the trial court erred in denying his motion to suppress evidence, and we affirm that ruling.

We review the denial of a motion to suppress for errors of law and are bound by the trial court's factual findings that are supported by sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If findings of fact are not made on a particular issue and there is conflicting evidence in the record, "we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *Id.* Thus, we take the facts primarily from the trial court's explicit and implicit findings.

Police officers monitored a telephone conversation between defendant and an informant. During the conversation, defendant agreed to deliver marijuana to the informant at the informant's residence. Armed with that information, the officers waited at the residence. When defendant knocked on the front door, he was arrested, handcuffed, and moved to the kitchen of the home. Officer Moffitt then read defendant his *Miranda* rights. Defendant said that he understood his rights and had no questions. Moffitt explained that he planned to ask defendant for consent to search defendant and his car. Defendant then agreed to those searches, but told Moffitt that he would not consent to a search of his residence. Moffitt searched defendant and found a bag of marijuana and $902 in defendant's pants pocket. Moffitt and Sergeant Engel then explained to defendant that he had a right to deny consent to search his residence but that, if he did, the officers would apply for a search warrant.

Defendant stated in the presence of at least two officers—Engel and Detective McCarley—that he wanted to talk

with an attorney about whether to consent to the residence search. Engel testified at the motion to suppress hearing that defendant "was given [an] opportunity" to contact an attorney and that "[r]epeatedly [defendant] was advised that he could call his attorney anytime he wanted before he made that decision but he never did." McCarley affirmed that defendant "was given several opportunities to contact an attorney, which * * * he never accepted." Engel further testified that, if defendant had wanted to speak with an attorney, he would have accommodated defendant by taking off his handcuffs and providing him with a phone.

After defendant requested an attorney, McCarley again explained to him that, if he did not consent to a search of his residence, the officers would apply for a search warrant. Defendant "thought for a moment" and asked McCarley whether, if he gave consent, he would be permitted to sit on his couch with his handcuffs removed, put away his dogs, and smoke a cigarette; he also asked whether the officers would "tear apart his house." McCarley agreed to defendant's requests and told him that the officers would not ransack the house. Defendant consented to a search of his residence under those conditions.

Moffitt transported defendant to his residence. Prior to the search, McCarley explained to defendant his rights concerning the search of his house, and defendant again expressed his willingness to consent. McCarley testified that, apart from allowing defendant to sit on the couch, put his dogs away, and smoke a cigarette, he did not threaten or make promises to defendant in order to obtain his consent.[1] The search was conducted without protest from defendant, and several items were seized.

Before trial, defendant moved to suppress the evidence obtained from the search of his residence. He argued

---

[1] Defendant asserted at the motion to suppress hearing that the officers had threatened to harm his dogs and leave his front door open if he did not consent. The trial court made no explicit finding of fact regarding that particular issue, but concluded that defendant's consent was voluntary. Accordingly, we presume that the trial court found that the officers did not threaten defendant to obtain his consent. That implicit finding is supported by the record.

that his request for counsel was unequivocal and that, therefore, any subsequent request for consent to search his residence violated his rights against compelled self-incrimination under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. Defendant also argued that his consent to the search of his residence was involuntary under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. The trial court denied the motion to suppress, reasoning:

> "There was an issue about consent to search the house, which was at the defendant's house[,] * * * and he had initially said that he didn't want to give consent and that he wanted to speak to an attorney. The officers—all of them testified how it was explained on at least two occasions that what would happen then is that certainly he had a right to talk to his lawyer and a phone would be provided. He was given that opportunity and he never availed himself of it on that date. The officers explained that what would happen is if he didn't consent, which was fine with them, they would proceed with a search warrant and that it would be up to a judge like me whether or not there was sufficient probable cause to search the residence.

> "[Defendant] seemed concerned with his dogs and his ability to be unhandcuffed and smoke a cigarette, which the officers let him do, and he said on that basis he would consent to a search of the house, which he let them do. Several items were seized.

> "I find the consent—I understand these cases that if someone unequivocally demands to talk to a lawyer that the police have to cease asking questions and that's the end of it. I understand that law. This isn't what happened in this case. It was—it was equivocal. It was initial. It was—it was never followed up. And in all of the circumstances, I don't think it was enough to invoke his right to counsel that would trigger any cessation of a discussion of the possibility of searching the house. I think that's all."

After a jury trial, defendant was convicted of the marijuana manufacture and delivery crimes. On appeal, defendant contends that the trial court erred in denying his motion to suppress, reiterating his arguments made to the

trial court.[2] The state responds that defendant's request for counsel was equivocal and, even if it was unequivocal, the request for consent to search did not constitute interrogation. Additionally, the state contends that, under the totality of the circumstances, defendant's consent was voluntary.

We conclude that the trial court erred in concluding that the request for counsel was equivocal. The court did not err, however, in denying the motion to suppress because the request for consent to search was not unlawful interrogation and defendant's consent was voluntary.

We first consider whether the police violated defendant's rights against compelled self-incrimination under Article I, section 12, by asking for consent to search defendant's residence after his unequivocal request for counsel.[3] It is well established that " 'Article I, section 12, provides a derivative right to the assistance of counsel during custodial interrogation.' " *State v. Scott*, 343 Or 195, 200, 166 P3d 528 (2007) (quoting *State v. Joslin*, 332 Or 373, 380, 29 P3d 1112 (2001)). Accordingly, " '[w]hen a suspect is in police custody and makes an unequivocal request to speak to a lawyer, all police interrogation of that suspect must cease.' " *Id.* at 201 (quoting *State v. Charboneau*, 323 Or 38, 54, 913 P2d 308 (1996)). When further interrogation after that point yields incriminating testimony, the testimony is compelled and inadmissible under Article I, section 12. *See id.* at 204-05. Whether a defendant's statement is an unequivocal or equivocal invocation of his derivative right to counsel is a question of law. *State v. Acremant*, 338 Or 302, 322, 108 P3d 1139, *cert den*, 546 US 864 (2005) (citing *Charboneau*, 323 Or at 55).

In this case, the trial court found that defendant "had initially said that he didn't want to give consent and that he wanted to speak to an attorney." The trial court erred, however, in concluding that, because defendant "was given that opportunity and he never availed himself of it," his

---

[2] Defendant also argues on appeal that the police violated his right to counsel under Article I, section 11, of the Oregon Constitution. However, that argument is unpreserved, and we do not address it.

[3] Article I, section 12, provides, in part, that "[n]o person shall * * * be compelled in any criminal prosecution to testify against himself."

request for counsel was equivocal. Defendant's statement that he wanted to talk to an attorney about whether to consent to a search of his residence was unequivocal. *See Acremant*, 338 Or at 322 (the defendant made an unequivocal request for counsel when he said, "I think that I do need a lawyer. I do."); *State v. Isom*, 306 Or 587, 595, 761 P2d 524 (1988) (the defendant made an unequivocal request for counsel when he stated he would not talk to police without a lawyer present). Defendant's actions after he invoked his right to counsel are not relevant to the determination of whether or not his invocation was unequivocal. *See State v. Gable*, 127 Or App 320, 329, 873 P2d 351, *rev den*, 319 Or 274 (1994) ("In deciding whether a statement is unequivocal, a trial court may only look at the conversation that preceded the statement." (Internal quotation marks omitted.)); *see also State v. Wickey*, 95 Or App 225, 230, 769 P2d 208 (1989) ("The putative request for counsel must be analyzed in the light of the circumstances existing when it was made.").[4] Thus, defendant unequivocally invoked his right to counsel, and the failure by defendant to repeat or reaffirm his request for counsel did not render his initial invocation equivocal.

Notwithstanding that defendant's invocation of his right to counsel was unequivocal, the state argues that the subsequent request for consent to search did not constitute forbidden interrogation by the police and that, therefore, the request did not violate defendant's rights under Article I, section 12, or the Fifth Amendment. The analysis of whether the request for consent by police constituted interrogation is the same under the state and federal constitutions. *See Scott*, 343 Or at 203 (adopting the federal definition of "interrogation"). Interrogation is "police conduct that the police 'should know [is] reasonably likely to elicit an incriminating response'; 'incriminating response,' in turn, means any inculpatory or exculpatory response that the prosecution later may seek to introduce at trial." *Id.* (quoting *Rhode Island v. Innis*, 446 US

---

[4] Of course, a suspect's statements following an unequivocal invocation of the right to counsel may be relevant to whether the suspect waives that right by initiating further contact with police. *See Acremant*, 338 Or at 322 ("After a suspect in custody asserts the right to counsel, however, the suspect remains free to waive that right by initiating further contact with the police."). The trial court did not find, and the state does not argue on appeal, that defendant subsequently waived his right to counsel.

291, 301, 301 n 5, 100 S Ct 1682, 64 L Ed 2d 297 (1980)) (brackets in *Scott*). We have consistently held that a consent to search is not an incriminating statement under Article I, section 12. *See State v. Brown*, 100 Or App 204, 208 n 4, 785 P2d 790, *rev den*, 309 Or 698 (1990) ("[A] consent to search is not an incriminating statement subject to suppression for a *Miranda* violation."); *State v. Baumeister*, 80 Or App 626, 628-29, 723 P2d 1049, *rev den*, 302 Or 299 (1986) ("A defendant's consent to search is not an incriminating statement subject to suppression for *Miranda* violations."); *State v. Bradbury*, 80 Or App 613, 615, 723 P2d 1051, *rev den*, 302 Or 342 (1986) (officer was not foreclosed from asking the defendant for consent to search after the defendant had invoked his right to counsel under Article I, section 12).

In *Baumeister*, the defendant was arrested in connection with a burglary. 80 Or App at 628. Police read the defendant his *Miranda* rights, and the defendant stated that he did not want to speak to the police. *Id.* The defendant requested an attorney. *Id.* Later, at the police station, police again read the defendant his *Miranda* rights and asked whether he wished to talk. *Id.* The defendant said, "No." *Id.* A police officer then asked the defendant for consent to search his car, which the defendant gave. *Id.* The trial court denied the defendant's motion to suppress evidence discovered during the search of his car. *Id.* The defendant appealed, contending that the police were foreclosed by Article I, section 12, and the Fifth Amendment from asking for consent to search his car. *Id.* We affirmed, reasoning, " 'Simply put, a consent to search is not an incriminating statement. [The defendant's] consent, in and of itself, is not evidence which tends to incriminate him.' " *Id.* at 629 (quoting *Cody v. Solem*, 755 F2d 1323, 1330 (8th Cir), *cert den*, 474 US 833 (1985)) (brackets in *Baumeister*).

Defendant acknowledges our holding in *Baumeister*, but contends that it is no longer controlling in light of *State v. Fish*, 321 Or 48, 893 P2d 1023 (1995). We disagree. In *Fish*, the defendant was pulled over by a police officer and asked to perform field sobriety tests. *Id.* at 50. The officer informed the defendant that, like the results of field sobriety tests, a refusal to perform the tests could be introduced as evidence against him in court. *Id.* The defendant refused to perform

the tests and moved to suppress evidence of his refusal on the grounds that it violated his rights under Article I, section 12, and the Fifth Amendment. *Id.* The Supreme Court affirmed the trial court's decision suppressing evidence of the defendant's refusal. *Id.* at 50-51. The court reasoned that the refusal was "testimonial" in nature because it communicated the defendant's state of mind: "[T]he fact that a person refused or failed to perform field sobriety tests inferentially may communicate the person's belief—that the person refused to perform the tests because he or she believed that the performance of the tests would be incriminating." *Id.* at 56. The court concluded that, "[b]ecause a refusal to perform field sobriety tests and the performance of [certain] such tests are both 'testimonial,' [the] defendant was compelled to testify against himself." *Id.* at 60.

A consent to search, however, creates no likely inference of a belief that the result of the search will be incriminating. A refusal to consent to search also creates no such inference. An intrusive search invades the privacy of both the innocent and the guilty, and is not usually desired by either. A compelled choice to consent or not is not compelled testimony under Article I, section 12.

Consistently with that analysis, since *Fish* was decided, we have twice acknowledged with approval our holding in *Baumeister. See State v. Norkeveck,* 214 Or App 553, 562, 168 P3d 265 (2007), *rev den,* 344 Or 558 (2008) ("In *State v. Baumeister,* * * * we rejected the argument that an officer was foreclosed from asking an accused for consent to search after the invocation of the right to counsel or to remain silent."); *State v. Larson,* 141 Or App 186, 193, 917 P2d 519, *rev den,* 324 Or 229 (1996) (citing *Baumeister* and noting its holding that "consent to search is not an incriminating statement"). We reiterate that a consent to search is not an incriminating statement and that, therefore, a request for consent to search does not constitute interrogation under Article I, section 12.

The result is the same under the Fifth Amendment: "A consent to search is not the type of incriminating statement toward which the fifth amendment is directed. It is not

in itself evidence of a testimonial or communicative nature."[5] *United States v. Lemon*, 550 F2d 467, 472 (9th Cir 1977) (internal quotation marks omitted).[6] Accordingly, defendant's rights against compelled self-incrimination were not violated under either the state or federal constitutions.

As stated above, defendant also argues that his consent to search his residence was involuntary under Article I, section 9,[7] and the Fourth Amendment.[8] Under both the federal and state constitutions, the test for voluntariness is whether, under the totality of the circumstances, the consent was given by an act of a defendant's free will or was the result of express or implied coercion. *Schneckloth v. Bustamonte*, 412 US 218, 227, 93 S Ct 2041, 36 L Ed 2d 854 (1973); *State v. De La Rosa*, 228 Or App 666, 675, 208 P3d 1012 (2009) (citing *State v. Hall*, 339 Or 7, 20, 115 P3d 908 (2005)). Defendant contends that "[t]he fact that the police ignored [his] request to seek the advice of counsel prior to deciding whether to grant consent to search created an inherently coercive situation." We disagree.

In *Norkeveck*, the defendant was taken into custody after allegations were made that he had had sexual contact with a minor. 214 Or App at 561-62. Police read the defendant his *Miranda* rights, he invoked his right to counsel, and there was no further questioning. *Id.* at 562. The police asked

---

[5] The Fifth Amendment provides, in part, that "[n]o person shall * * * be compelled in any criminal case to be a witness against himself."

[6] The federal circuit courts that have considered the issue have unanimously held that a consent to search is not an incriminating statement for the purposes of *Miranda*. *See, e.g., U.S. v. Hidalgo*, 7 F3d 1566, 1568 (11th Cir 1993) (citing representative cases).

[7] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[8] The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

the defendant for consent to search his computer after explaining that he did not have to consent to the search. *Id.* The defendant consented. *Id.* On appeal of the denial of his motion to suppress the fruits of that search, the defendant argued that, notwithstanding *Baumeister*, his consent was involuntary due to both his custody status and his invocation of his right to counsel. *Id.* We rejected that argument, reasoning that, even considering the defendant's custody status and invocation of his right to counsel, "the trial court's implicit finding that the consent was voluntary [was] supported by the evidence." *Id.*; *see also Bradbury*, 80 Or App at 615 (the defendant's consent to search was voluntary despite the fact that he was in custody and had requested counsel).

Defendant's argument in this case is indistinguishable from the argument we rejected in *Norkeveck*. Upon taking defendant into custody, the police read defendant his *Miranda* rights, which he stated he understood. The police repeatedly informed defendant that he did not have to give consent and that they would apply for a search warrant if necessary. Although defendant was in custody and had invoked his right to counsel, the police did not coerce or threaten defendant such that his will was overborne. Accordingly, defendant's consent was voluntary under Article I, section 9, and the Fourth Amendment.

Affirmed.