Argued and submitted on December 19, 2007,
reversed and remanded April 30, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HYATT ROBIN VONDEHN,
*Defendant-Appellant.*

Washington County Circuit Court
C040956CR; A128800

184 P3d 567

David J. Celuch argued the cause and filed the brief for appellant.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kathleen Cegla, Assistant Attorney General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals his convictions, after a stipulated facts trial, for one count each of delivery of a controlled substance and possession of a controlled substance under *former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005). He assigns error to the trial court's refusal to suppress evidence that the police obtained through a consent search while he was under arrest on an unrelated matter and its refusal to suppress statements that he made after the search and after receiving *Miranda* warnings. We reverse and remand.

The facts are generally undisputed. We state them in accordance with the trial court's findings, supplemented as necessary by additional evidence in the record. On the early morning of April 2, 2004, defendant was a passenger in a car on a road in Washington County. The driver was Sawyer, whose parents owned the car. Officer Stoneberg stopped the car to investigate a traffic violation and possible driving under the influence of intoxicants. As Stoneberg approached the car from the rear, he smelled an odor of fresh marijuana. He asked Sawyer to get out of the car and took her toward its rear; in doing so he noticed that the odor of marijuana was stronger at the rear of the car than at the front. Officer Espelien arrived shortly after Stoneberg stopped the car and approached it from the passenger side. In doing so, he also noticed an odor of marijuana coming from the car that was stronger than a single ounce would produce. Espelien then asked defendant for identification, partly to determine if defendant was under 18 and thus violating a curfew ordinance and partly because he believed that the car contained more than an ounce of marijuana and wanted to determine who defendant was before investigating further.[1]

Defendant did not have any identification. He gave Espelien a name and date of birth that did not check out. When Espelien asked defendant about the inconsistency, defendant gave him his true name and date of birth. With that information, Espelien determined that there was a warrant for defendant's arrest; the officers then arrested

---

[1] Both Sawyer and defendant had glassy eyes and dilated pupils, leading the officers to believe that they might be under the influence of intoxicants.

defendant, handcuffed him, and put him in the back seat of Stoneberg's police car.

Stoneberg then asked Sawyer for permission to search her car, which she gave. The officers found nothing in the passenger compartment. The only item in the trunk was a backpack that smelled of marijuana. Sawyer stated that she did not know who owned the backpack. Based on the strength of the odor, Stoneberg believed that there was a substantial amount of marijuana in the backpack. He took the backpack to defendant and asked him if it was his. Defendant said that it was. Stoneberg then asked whether there was marijuana inside; defendant said that there was. After that answer, Stoneberg asked for permission to look inside the backpack, and defendant consented. Stoneberg then searched the backpack and found two grocery bags that together contained approximately four ounces of marijuana. He gave defendant *Miranda* warnings and asked him where he got the marijuana, how much was in each bag, what the marijuana cost, and whether defendant was a middle man. Defendant answered each of those questions. When Stoneberg began seeking more detail, defendant stated that he wanted to talk to a lawyer. Stoneberg then stopped his questioning.

During the entire time that Stoneberg questioned defendant, including when defendant consented to the search of the backpack, defendant was under arrest, handcuffed, and in the back seat of a police car. Neither Stoneberg nor Espelien made any threats or promises, raised his voice, or drew a weapon at any time during the encounter. All of the questions and answers had a conversational rather than coercive tone.

Defendant filed a motion to suppress the statements that he made to Stoneberg both before and after he received *Miranda* warnings and to suppress evidence of the contents of the backpack. The trial court suppressed the pre-*Miranda* statements but otherwise denied the motion. Defendant subsequently agreed to a stipulated facts trial that relied primarily on the evidence that the court had refused to suppress; a different judge found him guilty based on that evidence.

On appeal, defendant assigns error to the trial court's denial of his motion to suppress evidence of the contents of the backpack and of his statements made after he received *Miranda* warnings. He argues first that his consent to search his backpack was invalid because of the officer's unlawful pre-*Miranda* questioning and that the police exploited that illegal questioning in obtaining his consent. He then argues that the post-*Miranda* questioning was a fruit of the original illegal questioning and of the allegedly unlawful search. We agree that both the search and the post-*Miranda* questioning were unlawful because Stoneberg impermissibly exploited defendant's pre-*Miranda* statements in order to obtain his consent to the search and to obtain his answers to the later questions. We therefore reverse his convictions.

■      We begin our analysis with defendant's pre-*Miranda* statements because the reason that the trial court correctly suppressed them helps frame our discussion of defendant's assignments of error.[2] Article I, section 12, of the Oregon Constitution provides that a person has the right not to be compelled to testify against himself; that right applies whenever the person is subject to custodial interrogation. *State v. Scott*, 343 Or 195, 201, 166 P3d 528 (2007). As part of guaranteeing the right not to be compelled to testify, the police must provide *Miranda* warnings before conducting any interrogation when the person is in full police custody or otherwise under compelling circumstances. *State v. Roble-Baker*, 340 Or 631, 638, 136 P3d 22 (2006); *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990); *State v. Magee*, 304 Or 261, 263, 744 P2d 250 (1987). The purpose of the warnings is to help ensure that any statement that the person makes is the product of the person's free choice rather than of the inherently coercive nature of police custody. *Roble-Baker*, 340 Or at 641; *State v. Sparklin*, 296 Or 85, 89, 672 P2d 1182 (1983). Deterring police misconduct is at most a minor reason for requiring the warnings. *See State v. Rowe*, 79 Or App 801, 804-05, 720 P2d 765, *rev den*, 302 Or 86 (1986).

---

[2] In his arguments to the trial court and on appeal, defendant did not always distinguish clearly between the state and federal constitutions. However, his arguments were sufficient to raise the state constitutional issues, and we therefore consider those issues first. Because defendant prevails on those issues, we do not reach his federal constitutional arguments.

■     Applying those principles to the pre-*Miranda* questioning in this case is straightforward. When Stoneberg questioned defendant, defendant was under arrest, handcuffed, and in a police car. Stoneberg's questions treated defendant as a suspect in the commission of a crime. Even though the reason for the arrest was not related to the subject of the questioning, those circumstances were sufficient to require *Miranda* warnings in order to protect defendant's state constitutional right against compelled testimony. *State v. Dorey*, 100 Or App 457, 786 P2d 1288, *rev den*, 310 Or 133 (1990).[3] The police did not provide the required warnings, and as a consequence, defendant's pre-*Miranda* statements are not admissible against him. As noted, the trial court's ruling was consistent with that analysis.

In his first assignment of error, defendant asserts that the trial court erred in failing to suppress the contents of the backpack. He argues both that his consent to the search was involuntary and that, even if his consent was voluntary, the police obtained it by exploiting the statements that he made before receiving *Miranda* warnings. Because we agree that defendant's consent was ineffective because the police exploited his pre-*Miranda* statements in order to obtain it, we do not consider whether the consent was also involuntary.[4]

In *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), the Supreme Court described the criteria for determining when a police violation of a defendant's right under Article I, section 9, to be free of an unlawful search or seizure may vitiate a later voluntary consent to a search. In this case, the police violated defendant's right under Article I, section 12, not to testify against himself, which includes the right not to make statements without receiving *Miranda* warnings. Before deciding whether the police obtained defendant's consent by

---

[3] Defendant's inability to leave the police car distinguishes this case from *Smith* and *State v. Goree*, 151 Or App 621, 950 P2d 919 (1997), *rev den*, 327 Or 123 (1998), in each of which the defendant was held in a facility for a reason that was not related to the subject of the interrogation but was free at any time to stop the interrogation and leave the room in which it occurred without leaving the facility.

[4] In the trial court, defendant focused on the voluntariness of his consent, but he also raised the exploitation issue sufficiently to preserve it for appeal.

exploiting his non-*Miranda* statements, we must first determine whether the analysis that the court established in *Hall* for violations of Article I, section 9, also applies to violations of Article I, section 12. We conclude that a search that is based on consent that derives from a previous violation of a defendant's rights under either constitutional provision—and that is thus the result of exploiting the violation—in itself violates those rights.

We begin with the Supreme Court's analysis in *Hall*. In that case, an officer illegally stopped the defendant by obtaining his identification for a warrant check without having a reasonable suspicion of criminal activity. The officer then obtained the defendant's consent to a search. 339 Or at 19. In discussing the defendant's consent, the Supreme Court noted that there were two ways in which the illegal seizure could have affected the validity of that consent. First, the illegal seizure could be relevant to the voluntariness of the consent. In every case, the state must prove that, under the totality of the circumstances, the defendant's consent was an act of free will and, thus, was not the result of express or implied police coercion. The effect of the unlawful conduct on the defendant's capacity to exercise his free will is one circumstance that is relevant to determining voluntariness. *Id.* at 20-21. Secondly, even if the consent was voluntary, it may still be invalid because the police obtained it by exploiting their illegal action. *Id.* at 21. Those effects are independent of each other; a voluntary consent is not an independent basis for the admission of the evidence if the consent is the result of the police exploiting the illegal action. In *Hall*, the defendant did not challenge the trial court's factual finding that his consent was voluntary; therefore, the Supreme Court discussed only the exploitation issue. *Id.* at 22-23.

The court began its discussion of exploitation by pointing out that the Oregon rule excluding the results of illegal searches and seizures is a constitutionally mandated rule that serves to vindicate a defendant's personal rights.[5] The

---

[5] In that respect, the court confirmed, the Oregon exclusionary rule is unlike the federal Fourth Amendment exclusionary rule, which the United States Supreme Court treats as a method for deterring unlawful police conduct. *Hall*, 339 Or at 23.

rights that Article I, section 9, protects include the right to be free from the use of evidence that the police obtain in violation of those rights. Excluding illegally obtained evidence will ensure that right by placing the defendant in the same position that the defendant would have occupied if the officers had followed the law. The issue on a motion to suppress evidence, thus, is not whether excluding the evidence will deter the police from violating a defendant's rights; rather, it is whether the police obtained the evidence as a result of actually having violated the defendant's rights. *Id.* at 23-24.

The fact that a consent search occurred after illegal police action does not necessarily make it invalid; mere temporal sequence does not in itself prove that the police exploited the illegality in order to obtain consent. In *Hall*, the court established criteria for distinguishing between consents that are the result of exploiting a previous violation of Article I, section 9, and those that are not. Under those criteria, the defendant must first establish a minimal factual nexus between the unlawful police conduct and the challenged evidence. In order to do so, the defendant must at least show the existence of a "but-for" relationship between the conduct and the evidence. However, that factual nexus, while necessary, is not in itself sufficient to require suppression. Rather, once the defendant has established the required factual nexus, the state may still obtain the admission of the disputed evidence by proving that the evidence did not in fact derive from the prior illegality. Doing so requires the state to show one of three things: First, that the police inevitably would have obtained the evidence through lawful procedures without the violation; secondly, that the police obtained the evidence independently of the violation; finally, that the factual connection between the violation and the evidence is so tenuous that the illegal conduct is not properly viewed as the basis of the discovery of the evidence. If the state demonstrates the existence of any of those alternatives, it will have shown that the unlawful police conduct has not placed the defendant in a worse position than the defendant would have occupied if the police had followed the law. When that is the case, suppression is not necessary in order to vindicate the defendant's constitutional rights. *Hall*, 339 Or at 24-26.

Because suppressing evidence that is the result of the exploitation of a previous illegality depends on whether the police benefitted from the prior illegality, not on whether the defendant acted voluntarily, a court will suppress evidence from a search that is the result of exploitation even if the defendant voluntarily consented to the search. A voluntary consent may itself be the result of police exploitation of a prior violation. Failing to suppress the evidence simply because the consent was voluntary would not place the defendant in the same position as if the police had obeyed the constitutional requirements and would thus be inconsistent with the rationale for the Oregon exclusionary rule. *Id.* at 27-28.

The issue in this case is whether the analysis that the Supreme Court described in *Hall* applies when the police obtain voluntary consent to a search by exploiting a previous interrogation that violated Article I, section 12, because of a failure to give *Miranda* warnings. We conclude that it does.

■■ The foundation of the analysis in *Hall* is that Article I, section 9, creates a constitutional right to be protected against unreasonable searches and seizures and that the purpose of the exclusionary rule is to vindicate that right.[6] In the same way, Article I, section 12, creates a constitutional right not to be compelled to provide testimony or furnish evidence against oneself, a right that applies in any kind of judicial or nonjudicial procedure, including police interrogation. *State v. Fish*, 321 Or 48, 53, 893 P2d 1023 (1995). The right by its express terms constitutes an exclusionary rule that prohibits the use of testimonial evidence acquired as a result of its violation, but it also protects a person from being compelled in the first instance to furnish evidence. *State v. Soriano*, 68 Or App 642, 646 n 4, 684 P2d 1220, *aff'd and opinion adopted*, 298 Or 392, 693 P2d 26 (1984). Again, under the Oregon Constitution, the right is based not on deterring police misconduct but on preserving a person's freedom to decide whether to speak. The *Miranda* warnings are an

---

[6] The Supreme Court and this court have applied the *Hall* exploitation analysis in a number of recent cases that involved violations of Article I, section 9. *State v. Thompkin*, 341 Or 368, 143 P3d 530 (2006); *State v. Tyler*, 218 Or App 105, 178 P3d 282 (2008); *State v. Campbell*, 207 Or App 585, 142 P3d 517 (2006).

essential part of protecting that freedom of decision and thus of protecting the constitutional right.[7] Excluding testimony that violates the *Miranda* rule, thus, is necessary to vindicate the constitutional right.

Oregon courts have not limited exploitation analysis to violations of Article I, section 9. Rather, they have applied a general rule against admitting evidence that the police obtain by exploiting previous unconstitutional conduct. In *State v. Wolfe*, 295 Or 567, 669 P2d 320 (1983), the police obtained an arrest warrant for the defendant on a rape charge and went to his house to execute the warrant. After arriving at the house and being allowed to enter, but before serving the warrant, the officers asked the defendant about his relationship with the complainant. After the defendant answered the officers' questions they told him about the rape charge, arrested him,[8] read him his *Miranda* rights, and obtained his consent to search his car and bedroom. The trial court suppressed both the pre-*Miranda* and the post-*Miranda* statements but refused to suppress the evidence that the officers discovered during the searches because it found that the defendant had voluntarily consented to those searches. *Wolfe*, 295 Or at 569-71.

On review, the Supreme Court held that the defendant's consent to the searches was invalid because it was involuntary. In determining that the consent was the result of coercion, express or implied, it applied the factors that the United States Supreme Court established in *Brown v. Illinois*, 422 US 590, 95 S Ct 2254, 45 L Ed 2d 416 (1975), for examining whether a confession that followed an illegal arrest was the result of the exploitation of the arrest. Those factors included the temporal proximity of the illegal action

---

[7] The specific *Miranda* warnings are not necessarily the only warnings that could protect that right. However, the Supreme Court has held that they are adequate and that it is not necessary to adopt additional warnings under Article I, section 12. *Sparklin*, 296 Or at 89.

[8] The Supreme Court did not expressly refer to the time of the arrest. In our opinion, after describing defendant's pre-*Miranda* statements, we stated, "[a]pparently, defendant was then formally arrested." *State v. Wolfe*, 61 Or App 409, 411, 657 P2d 227, *aff'd*, 295 Or 567, 669 P2d 320 (1983). In its opinion, the Supreme Court appears to have assumed that the defendant was under arrest when he consented to the search.

and the subsequent evidence, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *Wolfe*, 295 Or at 572 (citing *Brown*, 422 US at 603-04).

In *Wolfe*, the trial court had found that the defendant voluntarily consented to the search, and the Supreme Court accepted the trial court's finding of the historical facts on which it based that conclusion. Nevertheless, the court held that the consent failed to satisfy the legal test for voluntariness. It noted that the pre-*Miranda* questioning immediately preceded the request for consent to search and that the police deliberately attempted to elicit incriminating answers by questioning the defendant before serving the arrest warrant and giving *Miranda* warnings. The subsequent warnings and the explanation of the written consent to search form did not outweigh those facts. If the defendant believed that he had already incriminated himself, nothing occurred afterward to change that perception; he had no opportunity to reflect on his best course of action after he made the pre-*Miranda* statements. As a result, the state had failed to prove that the defendant's consent was voluntary. *Wolfe*, 295 Or at 572-73.

Although the Supreme Court in *Wolfe* suppressed the results of the search on the ground that the defendant's consent was involuntary rather than that it was the result of exploiting the *Miranda* violation, the court's discussion of voluntariness expressly relied on exploitation factors, such as the causal relationship between the police action in failing to give *Miranda* warnings and the defendant's statements. *Wolfe* thus appears to combine exploitation and voluntariness analysis in a way that goes beyond simply recognizing that a previous illegality may affect the voluntariness of a consent. In doing so, it is consistent with holding that police exploitation of pre-*Miranda* statements will lead to suppression of the results of a subsequent consent search, although it does not require that holding.

Our previous cases also suggest that the exploitation of conduct that violates a person's rights under Article I, section 12, will require suppression of the resulting evidence. In *State v. Chambers*, 147 Or App 626, 938 P2d 793 (1997), *rev*

*den*, 327 Or 82 (1998), the defendant, in a prosecution for driving under the influence of intoxicants, assigned error to the trial court's failure to suppress the results of a breath test and an incriminating statement. She argued that the police obtained the challenged evidence by exploiting her performance on the verbal components of several field sobriety tests; the trial court suppressed the results of those components of the tests because, under *Fish*, they violated the defendant's state constitutional right not to testify against herself. We implicitly accepted the defendant's assumption that evidence that the police obtained by exploiting a violation of her rights under *Fish* would be subject to suppression. However, we concluded that both the breath test and the subsequent statements were not the result of exploitation of the prior illegality. Because the officer had probable cause to arrest the defendant before the field sobriety tests, those tests were not the reason that she took the breath test. In addition, she made the challenged statements after several events, including *Miranda* warnings, that constituted a clear break between the field sobriety tests and the statements. *Chambers*, 147 Or App at 630-33.

In *State v. Gaither*, 196 Or App 131, 100 P3d 768 (2004), *rev den*, 338 Or 488 (2005), the defendant made a statement because a condition of probation required him to do so. We held that, as a result, the statement was unconstitutionally compelled. A month later, the defendant gave the same information to a detective after receiving *Miranda* warnings. We refused to suppress the second statement because there was no factual nexus between the first and second statements; there was no evidence that the defendant's second statement was in any way connected to the first or that the police exploited the first statement in order to obtain the second. 196 Or App at 138-40. In *Gaither*, as in *Chambers*, we clearly indicated that proof of the necessary factual nexus between the illegal conduct and the later evidence would have led to suppression of the challenged evidence. In both cases, as well, the challenged unconstitutional action involved compelled testimony that Article I, section 12, prohibited and that *Miranda* warnings are designed to prevent.

In short, previous Oregon cases strongly suggest that police exploitation of conduct that violates the rights that Article I, section 12, protects will taint any evidence that the police obtain in the same way that conduct that violates Article I, section 9, does. The state argues, however, that we should adopt the reasoning of Justice Thomas, speaking for a three-judge plurality in *United States v. Patane*, 542 US 630, 124 S Ct 2620, 159 L Ed 2d 667 (2004), and decline to require suppression of physical evidence that the police obtain by exploiting a mere failure to inform a defendant of his or her *Miranda* rights. However, analyzing the plurality's approach in light of Oregon law shows that the state is incorrect.[9]

In *Patane*, the police arrested the defendant but failed to fully inform him of his *Miranda* rights. After questioning, the defendant told the police where his pistol was located and gave them permission to get it. After the defendant was indicted on a charge of being a felon in possession of a firearm, the trial court suppressed evidence of the pistol on the ground that it was a fruit of the *Miranda* violation. The Court reversed. The plurality took the position that the failure to give the defendant *Miranda* warnings was not, in itself, a violation of his rights under the Fifth Amendment or even under *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), itself. Rather, a *Miranda* violation would not occur unless and until the defendant's unwarned statements were actually admitted at trial. As a result, the introduction of nontestimonial evidence that the police obtained as the result of voluntary but unwarned statements did not violate the United States Constitution. The heart of the plurality's opinion, and the portion that the state emphasizes in its brief, was the following statement:

> "It follows that police do not violate a suspect's constitutional rights (or the *Miranda* rule) by negligent or even deliberate failures to provide the suspect with the full panoply of warnings prescribed by *Miranda*. Potential violations occur, if at all, only upon the admission of unwarned

---

[9] As we said more than 20 years ago, in language that the Supreme Court adopted as its own, decisions by other courts interpreting similar provisions "are helpful in interpreting the Oregon Constitution [only] to the extent that their reasoning is persuasive and their background is applicable to Oregon." *Soriano*, 68 Or App at 645-46.

statements into evidence at trial. And, at that point, '[t]he exclusion of unwarned statements ... is a complete and sufficient remedy' for any perceived *Miranda* violation."

542 US at 641-42 (quoting *Chavez v. Martinez*, 538 US 760, 790, 123 S Ct 1994, 155 L Ed 2d 984 (2003)).

For several reasons, *Patane* does not assist the state in this case. First, the plurality does not accurately capture the nature of the right not to testify against oneself under Article I, section 12. If that right applied only when the evidence is actually offered at a criminal trial against the person who made the statement, it essentially would be only a protection against the *use* of the statement. However, as discussed, that notion is contrary to the cases that have held that the Oregon right also protects a person against being required to *furnish* evidence that could be used at a later criminal trial. *See, e.g., Soriano*, 68 Or App at 646 n 4. Accordingly, we reject the state's argument that we should interpret Article I, section 12, consistently with the analysis of the *Patane* plurality on the ground that the text of Article I, section 12, like the text of the Fifth Amendment, focuses on the right to be free from testimonial compulsion, and does not expressly refer to the right to be free from compulsion to furnish evidence.

Second, the *Patane* plurality's position depends on a distinction between an unwarned statement and an involuntary statement. Under its analysis, a statement obtained without providing *Miranda* warnings is not in itself a constitutional violation although obtaining an involuntary statement would, presumably, be a violation. Oregon law does not distinguish between unwarned and involuntary statements in the way that the *Patane* plurality posits.[10] In *Sparklin*, the court stated that, while Article I, section 12, prohibits compulsion, "we have recognized that any custodial setting, that is, one in which an individual is not free to leave, is * * * 'inherently coercive.' " 296 Or at 89. For that reason, the

---

[10] In *State v. Baumeister*, 80 Or App 626, 628-29, 723 P2d 1049, *rev den*, 302 Or 299 (1986), we rejected the argument that an officer was foreclosed from asking an accused for consent to search after the invocation of the right to counsel or to remain silent, because such a consent is not an incriminating statement subject to suppression for a *Miranda* violation. Because *Baumeister* did not involve an unwarned statement, it does not inform our analysis in this case.

police must inform a detained person of the right to terminate questioning at any time and to have an attorney's advice before speaking. "When the police honor these rights if [the] defendant chooses to assert them, the coercive atmosphere of police interrogation is to some degree dispelled." *Id.*

More recently, the court construed the federal *Miranda* decision as requiring warnings "to ensure that a person's statement is truly the product of free choice" when the police place the person in an " 'incommunicado police-dominated atmosphere' "; the court requires warnings under the Oregon Constitution based on that construction of *Miranda. Roble-Baker*, 340 Or at 641. In short, Oregon courts have not treated an unwarned statement, made while the person is in full custody or under compelling circumstances, as fully the product of the person's free choice. Warnings are necessary to remove the compulsion that is inherent in the situation. *See Rowe*, 79 Or App at 805.[11]

Because the *Patane* plurality's analysis fails to recognize the extent to which the warnings are necessary to protect the right to choose freely whether to speak, its conclusion that a *Miranda* violation is not a constitutional violation until the statement is admitted at trial is inconsistent with Oregon law under Article I, section 12.[12] Under the Oregon Constitution, the right not to testify against oneself adheres during custodial interrogation, *Scott*, 343 Or at 201, and *Miranda* warnings are an essential part of preventing compelled statements.

That reasoning also undercuts the state's argument that, assuming defendant's unwarned statement was voluntary, only a "technical" *Miranda* violation occurred in this case.[13] As discussed, the Supreme Court and this court have

---

[11] Of course, a statement given after warnings may still be involuntary for other reasons. *See, e.g., State v. Cochran*, 72 Or App 499, 696 P2d 1114 (1985).

[12] The *Patane* plurality also relied on federal cases that permit the use of non-*Miranda* statements in some circumstances. *See, e.g., Harris v. New York*, 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971). Oregon has rejected at least portions of that approach. *See, e.g., State v. Isom*, 306 Or 587, 761 P2d 524 (1988).

[13] The reference apparently describes an unwarned statement that is not actually coerced or otherwise involuntary. *Oregon v. Elstad*, 470 US 298, 318, 105 S Ct 1285, 84 L Ed 2d 222 (1985); *see also State v. McCoy*, 165 Or App 499, 504, 998 P2d 709, *rev den*, 331 Or 193 (2000) (quoting and following *Elstad*, apparently under the federal constitution).

recognized that custodial interrogation is inherently coercive, at least in the absence of *Miranda* warnings. *See, e.g.*, *Sparklin* 296 Or at 89; *Rowe*, 79 Or App at 805.[14] The purpose of those warnings is to limit the inherent coerciveness of custodial interrogation by making it more likely that any statements that it produces will be the result of the person's free choice. *Id.*; *see also Roble-Baker*, 340 Or at 641. Oregon courts have declined to hold that a statement produced by custodial interrogation without such warnings is admissible under Article I, section 12.

■     For the foregoing reasons, *Patane* does not undermine our conclusion that police exploitation of conduct that violates rights that Article I, section 12, protects will taint any evidence that the police obtain in the same way that conduct that violates Article I, section 9, does.[15] Accordingly, we conclude that the *Hall* analysis applies to evidence that the police obtain as the result of exploiting a *Miranda* violation and that that evidence is inadmissible at trial. The remaining question on defendant's first assignment of error is whether the police obtained his consent to search the backpack by exploiting the statements that he made before being given *Miranda* warnings. We hold that they did.

■     The application of *Hall* to the search of the backpack is straightforward. The factual nexus between the constitutional violation and defendant's consent to the search is clear. When the police found the backpack, its ownership was uncertain. It was in the trunk of a car that belonged to Sawyer's parents. Sawyer denied that it was hers. The police

---

[14] Moreover, even though the Article I, section 12, right is not primarily grounded in the goal of deterring police misconduct, we observe that, in cases like this one, where possession is the basis for the crime and physical evidence is the keystone of the case, warning suspects of their rights can hinder the gathering of evidence. When physical evidence is pivotal to a conviction and testimonial evidence is less important, there can arise a virtual incentive to flout *Miranda*. In such circumstances, it can be exceedingly difficult to accurately surmise whether a *Miranda* violation is merely "technical."

[15] In so concluding, we join the other states that have already determined after *Patane* that their state constitutions' protections against self-incrimination extend to physical evidence seized as a result of pre-*Miranda* statements. *See, e.g., State v. Peterson*, 923 A2d 585 (Vt 2007); *State v. Farris*, 109 Ohio St 3d 519, 849 NE2d 985 (2006), *cert den, Ohio v. Farris*, _____ US _____ , 127 S Ct 1371 (2007); *State v. Knapp*, 285 Wis 2d 86, 700 NW2d 899 (2005); *Commonwealth v. Martin*, 444 Mass 213, 827 NE2d 198 (2005).

learned that the backpack belonged to defendant only through their pre-*Miranda* questioning of him while he was under arrest, handcuffed, and in the back seat of a police car. Defendant's answers to Stoneberg's questions gave Stoneberg the information that he needed to ask defendant for consent to search it. There is a but-for relationship between the unconstitutional questioning and defendant's consent to the search. *Hall*, 339 Or at 25.

■ Because there is a factual nexus between the constitutional violation and the challenged evidence, we must next decide whether the state has proved that the evidence did not derive from the preceding illegality. It has not satisfied any of the three methods for doing so that the Supreme Court described in *Hall*. First, the state did not argue to the trial court that the police would have inevitably discovered the evidence in the absence of the *Miranda* violation, and the parties might have developed the record differently if it had. Even on this record, it is probable that a search of the backpack on some basis other than defendant's consent would not have shown that defendant possessed the marijuana. The police found the backpack in the trunk of a car that belonged to the parents of the car's driver; defendant was only a passenger. There was nothing about the backpack itself that tied it to defendant. Second, the police did not in fact obtain the evidence independently of the *Miranda* violation. Rather, that violation provided the basis for their request that defendant consent to a search and that consent led to the evidence. Third, there were no intervening circumstances that broke the causal relationship between the *Miranda* violation and defendant's consent. The relationship between the violation and the discovery of the evidence is not so tenuous that the violation cannot properly be viewed as the source of the evidence. Because the police obtained it by exploiting the *Miranda* violation, the trial court erred in denying defendant's motion to suppress the evidence that the police found in the backpack.

■ In his second assignment of error, defendant asserts that the trial court erred in failing to suppress the statements that he made after receiving *Miranda* warnings. He argues both that those statements were involuntary and that the

police obtained them by exploiting his pre-*Miranda* statements and the evidence that they obtained by searching the backpack. In its brief, the state responds to defendant's voluntariness argument but does not discuss exploitation. Because the exploitation analysis is decisive, we do not discuss voluntariness.

Our previous cases indicate that courts must exclude statements that the police obtain by exploiting a previous illegality just as they must exclude physical evidence that they obtain in that way. Thus, in *Gaither*, the defendant made incriminating statements to a probation officer in circumstances in which he would have faced the threat of a probation violation for failing to answer. We agreed with the defendant that those statements were involuntary and that the trial court erred in concluding otherwise. 196 Or App at 135-39. However, the defendant provided the same information a month later to a detective after being given *Miranda* warnings. We held that the police did not obtain the later statements by exploiting the original involuntary statements, pointing out that the mere fact of a previous illegality does not require suppression of a subsequent statement unless there is a causal connection between the illegality and the statement. There was no evidence that the defendant's second statement was in any way connected to his first statement or that the police exploited the first statement in order to obtain the second. For that reason we affirmed the conviction. *Id.* at 139-40.

The question in this case, thus, is whether the police obtained defendant's post-*Miranda* statements by exploiting both his pre-*Miranda* statements and the evidence that they obtained from the search of the backpack, evidence that was itself the fruit of the previous exploitation of the original illegality. We conclude that they did. The factual nexus between the later statements and the previous illegal actions is clear. The entire episode lasted about half an hour, with each phase flowing directly into the next. Stoneberg based the questions that defendant answered after receiving *Miranda* warnings on the evidence that he obtained from the earlier questioning and from the search of the backpack. There is a but-for relationship between the prior illegality and the post-*Miranda*

questioning. None of the three bases for admitting the evidence despite its factual relationship to the prior illegality applies to that questioning. The record does not support a conclusion that the police would have otherwise inevitably discovered the evidence of his later statements. The police did not in fact obtain that evidence independently of the earlier violations. Finally, unlike in *Gaither*, there was no break in the causal relationship between the earlier violations and the later statements. Under the facts of this case, the *Miranda* warnings were not sufficient to constitute such a break. For those reasons, the trial court erred in denying defendant's motion to suppress his answers to the post-*Miranda* questioning.

We conclude, thus, that the trial court erred in admitting the evidence that defendant challenges on appeal. Because that evidence was the basis for defendant's convictions, we must reverse those convictions.

Reversed and remanded.