Submitted November 30, 2010, affirmed February 23, petition for review denied June 30, 2011 (350 Or 530)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## HARALD BERND BIELSKIES,
aka Harald B. Biellskis,
aka Harald Bernd Biellskis,
aka Harry Bernd Bielskis,
*Defendant-Appellant.*

Multnomah County Circuit Court
070532388; A139460

249 P3d 144

Peter Gartlan, Chief Defender, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Erin C. Lagesen, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge pro tempore.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals from his conviction for unlawful delivery of a controlled substance, ORS 475.840(1)(b). Defendant asserts that the statements that he made to a police officer after receiving *Miranda* warnings[1] should have been suppressed because the officer had previously questioned him without first giving him *Miranda* warnings, in violation of Article I, section 12, of the Oregon Constitution.[2] We affirm.

While on patrol, Officer Gandy spotted defendant driving. Gandy knew that defendant had a suspended license, so Gandy followed defendant until defendant stopped his car in front of his house. Gandy pulled his police car up to defendant and began talking to him; after a short conversation, Gandy took defendant into custody for driving with a suspended license. Gandy handcuffed and searched defendant, finding a pill bottle that contained a large quantity of various kinds of pills that were separately packaged in plastic wrapping.[3] Gandy also found $1,000 in cash in defendant's wallet. Gandy then conducted an inventory of defendant's car and found a piece of paper; on that piece of paper were numbers of pills and dollar amounts.[4] Gandy believed the paper to be a "drug ledger," and he suspected that defendant was engaged in selling the pills. Gandy also found $881 underneath the driver's side floor mat of defendant's car.

After seizing the pill bottle and the piece of paper, Gandy placed defendant, who was still handcuffed, inside his patrol car. Gandy then drove to meet an informant and during that drive questioned defendant about his knowledge of drug dealing in the neighborhood, and whether he knew of anyone who was trafficking in drugs. Gandy had not given defendant *Miranda* warnings at that juncture because he did

---

[1] *"Miranda* warnings" are those warnings "required to effectuate the protections afforded by Article I, section 12," so named for the United States Supreme Court's decision, *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). *State v. Vondehn*, 348 Or 462, 470, 236 P3d 691 (2010).

[2] Article I, section 12, provides, in part, that "no person shall * * * be compelled in any criminal prosecution to testify against himself."

[3] The pills were later determined to be Oxycontin, Oxycodone, and Valium.

[4] Those searches are not at issue in this appeal.

not want to interrupt their conversation; Gandy told defendant that nothing that he said would be admissible because Gandy had not given him *Miranda* warnings. Defendant denied having any knowledge of drug dealing, and he told Gandy that he took the pills for an injury he had suffered and that he had bought them from friends.

After driving around for approximately one hour, Gandy took defendant to a police precinct and placed him in a holding cell. Gandy then gave defendant *Miranda* warnings, and defendant said that he understood them. After Gandy identified the pills that he had taken from defendant as Oxycontin, Oxycodone, and Valium, he drove defendant to the jail. While they were en route, Gandy questioned defendant about the pills. Defendant told Gandy that he sold pills to support his addiction to them, and that he thought each pill was worth between five and ten dollars.

Before his trial on the delivery of controlled substances charge,[5] defendant moved to suppress the statements that he made to Gandy, both before and after receiving the *Miranda* warnings. The prosecutor conceded that the pre-*Miranda* statements were inadmissible, and the trial court denied defendant's motion with regard to the post-*Miranda* statements. The court explained:

"[T]o the extent that there was questioning that was not [Mirandized] and apparently there was some as a tactical choice by the Officer, right?

"* * * * *

"[T]hat's the effect of not giving—deliberately not giving the *Miranda* is that we're saying to the guy, and apparently that was discussed, that by us having this conversation without me giving you *Miranda* warnings, nothing we say here could come into your trial.

"Now, as it turns out, there wasn't much [defendant] had to say, which I suppose is both an advantage and a disadvantage. It was a disadvantage at the time, but when you get

---

[5] For reasons not pertinent to this appeal, defendant was tried a second time on the delivery of controlled substances charge, after the jury in his first trial failed to return a verdict on that charge. Only defendant's conviction at the second trial is at issue in this appeal.

down to it, he didn't—the Officer did not say he told me he was a drug dealer or anything like that in those initial conversations.

"* * * * *

"So once we've suppressed as, you know, consistent with the Officer's intentions, all those statements, then you get to the *Miranda* warnings, and at this point he's saying to the guy that this does count from here on out. I mean—and particularly in this context where there was a discussion of why they weren't talking about *Miranda* first. Now we actually get to *Miranda* and say okay here's your *Miranda* warnings.

"Now, the conversation wasn't about other people or who he could turn in at that point. It focused on what he was doing and where he got the drugs that he had.

"* * * * *

"So I guess I don't think that the statements made post-*Miranda* are tainted by the conversations that occurred pre-*Miranda*, even with the knowing and tactical decision of the Officer to defer *Miranda*, which is really what happened here. I don't think that by deferring he compromises his ability to get the later statements in.

"* * * * *

"So I'm not persuaded that the behavior of the Officer in questioning the defendant before the *Miranda* warnings were given, which has led to the state's concession that those statements made pre-*Miranda* aren't going to come in, right? Is a basis for excluding the statements that are afterwards."

Defendant was convicted of delivery of a controlled substance. This appeal followed.

On appeal defendant argues, based on this court's opinion in *State v. Vondehn*, 219 Or App 492, 184 P3d 567 (2008), *aff'd in part and rev'd in part*, 348 Or 462, 236 P3d 691 (2010), that his post-*Miranda* statements were the unattenuated product of Gandy's exploitation of his pre-*Miranda* statements, which the state again concedes were obtained in violation of defendant's rights under Article I, section 12. The state replies, first, that Article I, section 12, does not require

suppression of statements obtained in the absence of *Miranda* warnings and, second, that even if Article I, section 12, does require such suppression, the trial court properly denied defendant's motion because defendant's post-*Miranda* statements were obtained independently from the *Miranda* violations.

When the parties filed their opening briefs, this court's opinion in *Vondehn* was pending on review in the Supreme Court, and, thus, the parties framed their arguments consistently with this court's analysis in that case. The Supreme Court's subsequent opinion, however, has drained the parties' arguments of their force. First, the Supreme Court made clear that *Miranda* warnings are required by Article I, section 12, and that, where those warnings are not given, the remedy is suppression of the evidence derived from that constitutional violation. *Vondehn*, 348 Or at 474. Second, the court declined to apply the kind of "exploitation" analysis to Article I, section 12, that this court had imported from Article I, section 9, and applied in our opinion in *Vondehn*. *See* 219 Or App at 499-500 (applying exploitation analysis set out in *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), to violation of Article I, section 12); *cf. Vondehn*, 348 Or at 475-76 ("When the police violate Article I, section 12, * * * the state is precluded from using evidence *derived* from that violation to obtain a criminal conviction." (Emphasis added.)). In light of the Supreme Court's opinion in *Vondehn*, we reject the parties' arguments and apply that court's overriding analysis.

As noted, the state conceded in the trial court that defendant's pre-*Miranda* statements should be suppressed, and the trial court did so. The trial court correctly suppressed those statements. When Gandy questioned defendant before giving him *Miranda* warnings, defendant was handcuffed in the backseat of Gandy's police car; that constitutes compelling circumstances. *See Vondehn*, 348 Or at 486 (holding that the defendant was in "inherently compelling circumstances" when the defendant was questioned while handcuffed in the back of a police car). That custodial interrogation took place in the absence of *Miranda* warnings and, thus, constituted a violation of Article I, section 12, requiring suppression of defendant's statements.

With respect to defendant's post-*Miranda* statements, the dispositive question is whether, in light of the previous unwarned questioning, Gandy's belated *Miranda* warnings were sufficient to ensure that defendant's decision to waive his right to remain silent was voluntary. In *Vondehn*, the Supreme Court held that, "[i]f the state establishes that the police accurately and effectively, although belatedly, gave the suspect the information necessary to a valid waiver of the right against self-incrimination, then, under the Oregon Constitution, a suspect's subsequent voluntary statements will be admissible." *Vondehn*, 348 Or at 481. The court elaborated, explaining:

> "Not every instance in which the police question first and warn later communicates a mixed message. Whether and to what extent police officers who fail to administer *Miranda* warnings before beginning custodial interrogation obfuscate or contradict the information that *Miranda* warnings are intended to convey and whether and to what extent those officers later correct that misinformation are issues that trial courts must confront and determine. In doing so, courts should consider all relevant circumstances, including * * * the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the statements given by the suspect, the timing and setting of the first and the second interrogation sessions, the continuity of police personnel, the degree to which the interrogator's questions treated the second round of interrogation as continuous with the first, and whether the police cautioned that the earlier unwarned statement could not be used in any subsequent prosecution."

*Id.* at 481-82 (internal citations omitted). The court further explained that

> "[T]he test of the efficacy of the belated warnings is an objective one. A court considers the factual circumstances to determine the accuracy and effectiveness of the information that the police convey; a court does not use those circumstances to attempt to determine the psychological effect that the particular police course of conduct had on the particular defendant or whether the initial failure to warn caused the particular defendant to make the post-*Miranda* statements.

> "* * * * *

"Our focus is not on the subjective intent of the police but on the objective message that the police actually convey by the techniques that they use and the warnings that they give. That does not mean, however, that the deliberateness with which the police act is entirely irrelevant. * * * If the police purposely obscure the legal and practical significance of a belated *Miranda* admonition * * * it will not be difficult for a court to determine under the objective test that we describe today that the police did not accurately and effectively deliver the information necessary to a valid waiver of Article I, section 12, rights."

*Id.* at 482-83 (internal citations omitted).

Finally, in analyzing the defendant's claim that the *Miranda* warnings he belatedly received were insufficient to ensure that his waiver of those rights was voluntary, the court considered several facts. First, the court observed that "there was a marked difference in the questioning before and after [the officer] administered the *Miranda* warnings. The unwarned questions were routine in nature * * *. The second warned questions were significantly more detailed and probing." *Vondehn*, 348 Or at 485. "Second," the court ruled, "there was a break in the questioning," of about five minutes, between the warned and unwarned questions, and that break, followed by the *Miranda* warnings, "was an objective indication that the situation had changed and was governed by new rules." *Id.* Third, although the officer in *Vondehn* had not cautioned the defendant that his unwarned statements could not be used against him, the court explained that,

"[w]hen an officer does caution a defendant that the unwarned statements that the defendant made may not be admissible, that caution may militate (indeed, often will) in favor of finding that the officer's belated *Miranda* warnings were effective, but such a caution is not necessary to that result."

*Id.* at 486. Finally, the court stated that, although the defendant had been handcuffed when he was questioned before receiving the *Miranda* warnings, "he was not subjected to additional coercion." *Id.* Accordingly, the court concluded that "the belated *Miranda* warnings that [the officer] gave accurately and effectively communicated that defendant had,

from that time forth, the right to remain silent." *Id.* Consequently, the court held that the defendant's post-*Miranda* statements should have been admitted. *Id.*

Applying that analysis here, we reach a similar conclusion. First, as the trial court concluded, there was a "marked difference" between Gandy's questions before and after he administered the *Miranda* warnings. Gandy's unwarned questions, during the time that he and defendant were driving around the neighborhood, focused on whether defendant knew of anyone *else* who was involved in the drug trade generally; the subsequent, warned questions focused on whether defendant *himself* was involved in dealing drugs, in particular, the pills that Gandy had seized from defendant. Second, there was a break in the questioning here. Gandy's unwarned questioning of defendant took place over the course of approximately one hour while defendant was in the back of Gandy's police car. The *Miranda* warnings was administered at a police precinct holding cell after Gandy had left defendant alone while Gandy identified the pills, and defendant's subsequent warned statement was made still later, while Gandy was transporting him to the jail. As in *Vondehn*, we conclude that the break in the questioning, coupled with the *Miranda* warnings "was an objective indication that the situation had changed and was governed by new rules." *Vondehn*, 348 Or at 485. Third, as the trial court found in this case, Gandy did in fact caution defendant that his unwarned statements could not be used against him; consistently with *Vondehn*, that fact "militate[s] * * * in favor of finding that [Gandy's] belated *Miranda* warnings were effective." *Id.* at 486. Finally, although defendant was handcuffed in the back of Gandy's police car during the unwarned questioning, the record contains no evidence that he was subjected to any additional coercion. In light of all relevant circumstances, we conclude that the trial court did not err in denying defendant's motion to suppress his post-*Miranda* statements.

Affirmed.