249 P.3d 144 (2011)
241 Or. App. 17
STATE of Oregon, Plaintiff-Respondent,
v.
Harald Bernd BIELSKIES, aka Harald B. Biellskis, aka Harald Bernd Biellskis, aka Harry Bernd Bielskis, Defendant-Appellant.
070532388; A139460.
Court of Appeals of Oregon.
Submitted November 30, 2010.
Decided February 23, 2011.
Peter Gartlan, Chief Defender, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.
John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Erin C. Lagesen, Assistant Attorney General, filed the brief for respondent.
Before SERCOMBE, Presiding Judge, and BREWER, Chief Judge, and LANDAU, Judge Pro Tempore.
BREWER, C.J.
Defendant appeals from his conviction for unlawful delivery of a controlled substance, ORS 475.840(1)(b). Defendant asserts that the statements that he made to a police officer after receiving Miranda warnings[1] should have been suppressed because the officer had previously questioned him without first giving him Miranda warnings, in violation of Article I, section 12, of the Oregon Constitution.[2] We affirm.
While on patrol, Officer Gandy spotted defendant driving. Gandy knew that defendant had a suspended license, so Gandy followed defendant until defendant stopped his car in front of his house. Gandy pulled his police car up to defendant and began talking to *145 him; after a short conversation, Gandy took defendant into custody for driving with a suspended license. Gandy handcuffed and searched defendant, finding a pill bottle that contained a large quantity of various kinds of pills that were separately packaged in plastic wrapping.[3] Gandy also found $1,000 in cash in defendant's wallet. Gandy then conducted an inventory of defendant's car and found a piece of paper; on that piece of paper were numbers of pills and dollar amounts.[4] Gandy believed the paper to be a "drug ledger," and he suspected that defendant was engaged in selling the pills. Gandy also found $881 underneath the driver's side floor mat of defendant's car.
After seizing the pill bottle and the piece of paper, Gandy placed defendant, who was still handcuffed, inside his patrol car. Gandy then drove to meet an informant and during that drive questioned defendant about his knowledge of drug dealing in the neighborhood, and whether he knew of anyone who was trafficking in drugs. Gandy had not given defendant Miranda warnings at that juncture because he did not want to interrupt their conversation; Gandy told defendant that nothing that he said would be admissible because Gandy had not given him Miranda warnings. Defendant denied having any knowledge of drug dealing, and he told Gandy that he took the pills for an injury he had suffered and that he had bought them from friends.
After driving around for approximately one hour, Gandy took defendant to a police precinct and placed him in a holding cell. Gandy then gave defendant Miranda warnings, and defendant said that he understood them. After Gandy identified the pills that he had taken from defendant as Oxycontin, Oxycodone, and Valium, he drove defendant to the jail. While they were en route, Gandy questioned defendant about the pills. Defendant told Gandy that he sold pills to support his addiction to them, and that he thought each pill was worth between five and ten dollars.
Before his trial on the delivery of controlled substances charge,[5] defendant moved to suppress the statements that he made to Gandy, both before and after receiving the Miranda warnings. The prosecutor conceded that the pre-Miranda statements were inadmissible, and the trial court denied defendant's motion with regard to the post-Miranda statements. The court explained:
"[T]o the extent that there was questioning that was not [Mirandized] and apparently there was some as a tactical choice by the Officer, right?
"* * * * *
"[T]hat's the effect of not givingdeliberately not giving the Miranda is that we're saying to the guy, and apparently that was discussed, that by us having this conversation without me giving you Miranda warnings, nothing we say here could come into your trial.
"Now, as it turns out, there wasn't much [defendant] had to say, which I suppose is both an advantage and a disadvantage. It was a disadvantage at the time, but when you get down to it, he didn'tthe Officer did not say he told me he was a drug dealer or anything like that in those initial conversations.
"* * * * *
"So once we've suppressed as, you know, consistent with the Officer's intentions, all those statements, then you get to the Miranda warnings, and at this point he's saying to the guy that this does count from here on out. I meanand particularly in this context where there was a discussion of why they weren't talking about Miranda first. Now we actually get to Miranda and say okay here's your Miranda warnings.
"Now, the conversation wasn't about other people or who he could turn in at that *146 point. It focused on what he was doing and where he got the drugs that he had.
"* * * * *
"So I guess I don't think that the statements made post-Miranda are tainted by the conversations that occurred pre-Miranda, even with the knowing and tactical decision of the Officer to defer Miranda, which is really what happened here. I don't think that by deferring he compromises his ability to get the later statements in.
"* * * * *
"So I'm not persuaded that the behavior of the Officer in questioning the defendant before the Miranda warnings were given, which has led to the state's concession that those statements made pre-Miranda aren't going to come in, right? Is a basis for excluding the statements that are afterwards."
Defendant was convicted of delivery of a controlled substance. This appeal followed.
On appeal defendant argues, based on this court's opinion in State v. Vondehn, 219 Or. App. 492, 184 P.3d 567 (2008), aff'd in part and rev'd in part, 348 Or. 462, 236 P.3d 691 (2010), that his post-Miranda statements were the unattenuated product of Gandy's exploitation of his pre-Miranda statements, which the state again concedes were obtained in violation of defendant's rights under Article I, section 12. The state replies, first, that Article I, section 12, does not require suppression of statements obtained in the absence of Miranda warnings and, second, that even if Article I, section 12, does require such suppression, the trial court properly denied defendant's motion because defendant's post-Miranda statements were obtained independently from the Miranda violations.
When the parties filed their opening briefs, this court's opinion in Vondehn was pending on review in the Supreme Court, and, thus, the parties framed their arguments consistently with this court's analysis in that case. The Supreme Court's subsequent opinion, however, has drained the parties' arguments of their force. First, the Supreme Court made clear that Miranda warnings are required by Article I, section 12, and that, where those warnings are not given, the remedy is suppression of the evidence derived from that constitutional violation. Vondehn, 348 Or. at 474, 236 P.3d 691. Second, the court declined to apply the kind of "exploitation" analysis to Article I, section 12, that this court had imported from Article I, section 9, and applied in our opinion in Vondehn. See 219 Or.App. at 499-500, 184 P.3d 567 (applying exploitation analysis set out in State v. Hall, 339 Or. 7, 115 P.3d 908 (2005), to violation of Article I, section 12); cf. Vondehn, 348 Or. at 475-76, 236 P.3d 691 ("When the police violate Article I, section 12, * * * the state is precluded from using evidence derived from that violation to obtain a criminal conviction." (Emphasis added.)). In light of the Supreme Court's opinion in Vondehn, we reject the parties' arguments and apply that court's overriding analysis.
As noted, the state conceded in the trial court that defendant's pre-Miranda statements should be suppressed, and the trial court did so. The trial court correctly suppressed those statements. When Gandy questioned defendant before giving him Miranda warnings, defendant was handcuffed in the backseat of Gandy's police car; that constitutes compelling circumstances. See Vondehn, 348 Or. at 486, 236 P.3d 691 (holding that the defendant was in "inherently compelling circumstances" when the defendant was questioned while handcuffed in the back of a police car). That custodial interrogation took place in the absence of Miranda warnings and, thus, constituted a violation of Article I, section 12, requiring suppression of defendant's statements.
With respect to defendant's post-Miranda statements, the dispositive question is whether, in light of the previous unwarned questioning, Gandy's belated Miranda warnings were sufficient to ensure that defendant's decision to waive his right to remain silent was voluntary. In Vondehn, the Supreme Court held that, "[i]f the state establishes that the police accurately and effectively, although belatedly, gave the suspect the information necessary to a valid waiver of the right against self-incrimination, then, under the Oregon Constitution, a suspect's subsequent voluntary statements will be admissible." *147 Vondehn, 348 Or. at 481, 236 P.3d 691. The court elaborated, explaining:
"Not every instance in which the police question first and warn later communicates a mixed message. Whether and to what extent police officers who fail to administer Miranda warnings before beginning custodial interrogation obfuscate or contradict the information that Miranda warnings are intended to convey and whether and to what extent those officers later correct that misinformation are issues that trial courts must confront and determine. In doing so, courts should consider all relevant circumstances, including * * * the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the statements given by the suspect, the timing and setting of the first and the second interrogation sessions, the continuity of police personnel, the degree to which the interrogator's questions treated the second round of interrogation as continuous with the first, and whether the police cautioned that the earlier unwarned statement could not be used in any subsequent prosecution."
Id. at 481-82, 236 P.3d 691 (internal citations omitted). The court further explained that
"[T]he test of the efficacy of the belated warnings is an objective one. A court considers the factual circumstances to determine the accuracy and effectiveness of the information that the police convey; a court does not use those circumstances to attempt to determine the psychological effect that the particular police course of conduct had on the particular defendant or whether the initial failure to warn caused the particular defendant to make the post-Miranda statements.
"* * * * *
"Our focus is not on the subjective intent of the police but on the objective message that the police actually convey by the techniques that they use and the warnings that they give. That does not mean, however, that the deliberateness with which the police act is entirely irrelevant. * * * If the police purposely obscure the legal and practical significance of a belated Miranda admonition * * * it will not be difficult for a court to determine under the objective test that we describe today that the police did not accurately and effectively deliver the information necessary to a valid waiver of Article I, section 12, rights."
Id. at 482-83, 236 P.3d 691 (internal citations omitted).
Finally, in analyzing the defendant's claim that the Miranda warnings he belatedly received were insufficient to ensure that his waiver of those rights was voluntary, the court considered several facts. First, the court observed that "there was a marked difference in the questioning before and after [the officer] administered the Miranda warnings. The unwarned questions were routine in nature * * *. The second warned questions were significantly more detailed and probing." Vondehn, 348 Or. at 485, 236 P.3d 691. "Second," the court ruled, "there was a break in the questioning," of about five minutes, between the warned and unwarned questions, and that break, followed by the Miranda warnings, "was an objective indication that the situation had changed and was governed by new rules." Id. Third, although the officer in Vondehn had not cautioned the defendant that his unwarned statements could not be used against him, the court explained that,
"[w]hen an officer does caution a defendant that the unwarned statements that the defendant made may not be admissible, that caution may militate (indeed, often will) in favor of finding that the officer's belated Miranda warnings were effective, but such a caution is not necessary to that result."
Id. at 486, 236 P.3d 691. Finally, the court stated that, although the defendant had been handcuffed when he was questioned before receiving the Miranda warnings, "he was not subjected to additional coercion." Id. Accordingly, the court concluded that "the belated Miranda warnings that [the officer] gave accurately and effectively communicated that defendant had, from that time forth, the right to remain silent." Id. Consequently, the court held that the defendant's post-Miranda statements should have been admitted. Id.
*148 Applying that analysis here, we reach a similar conclusion. First, as the trial court concluded, there was a "marked difference" between Gandy's questions before and after he administered the Miranda warnings. Gandy's unwarned questions, during the time that he and defendant were driving around the neighborhood, focused on whether defendant knew of anyone else who was involved in the drug trade generally; the subsequent, warned questions focused on whether defendant himself was involved in dealing drugs, in particular, the pills that Gandy had seized from defendant. Second, there was a break in the questioning here. Gandy's unwarned questioning of defendant took place over the course of approximately one hour while defendant was in the back of Gandy's police car. The Miranda warnings was administered at a police precinct holding cell after Gandy had left defendant alone while Gandy identified the pills, and defendant's subsequent warned statement was made still later, while Gandy was transporting him to the jail. As in Vondehn, we conclude that the break in the questioning, coupled with the Miranda warnings "was an objective indication that the situation had changed and was governed by new rules." Vondehn, 348 Or. at 485, 236 P.3d 691. Third, as the trial court found in this case, Gandy did in fact caution defendant that his unwarned statements could not be used against him; consistently with Vondehn, that fact "militate[s] * * * in favor of finding that [Gandy's] belated Miranda warnings were effective." Id. at 486, 236 P.3d 691. Finally, although defendant was handcuffed in the back of Gandy's police car during the unwarned questioning, the record contains no evidence that he was subjected to any additional coercion. In light of all relevant circumstances, we conclude that the trial court did not err in denying defendant's motion to suppress his post-Miranda statements.
Affirmed.
NOTES
[1] "Miranda warnings" are those warnings "required to effectuate the protections afforded by Article I, section 12," so named for the United States Supreme Court's decision, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). State v. Vondehn, 348 Or. 462, 470, 236 P.3d 691 (2010).
[2] Article I, section 12, provides, in part, that "no person shall * * * be compelled in any criminal prosecution to testify against himself."
[3] The pills were later determined to be Oxycontin, Oxycodone, and Valium.
[4] Those searches are not at issue in this appeal.
[5] For reasons not pertinent to this appeal, defendant was tried a second time on the delivery of controlled substances charge, after the jury in his first trial failed to return a verdict on that charge. Only defendant's conviction at the second trial is at issue in this appeal.